Our final case this morning is number 15, 3217, Davis v. Navy. Mr. Tinkle, is that the way to pronounce it? Yes. Thank you, Your Honor. May it please the Court, Marshall Tinkle for the Appellant Keith Davis. This appeal examines the maximum reasonable penalty for a single instance of displeasing conduct. If this standard, maximum reasonable penalty, is to have any meaningful oversight, this Court should conclude that the maximum reasonable penalty in this instance has got to be something less than the ultimate sanction of removal. What was the offense? Keith Davis was assigned to the inspection booth at the shipyard's commercial vehicle inspection station known as SEVIS. The SEVIS booth is on the left side of the entrance to the Portsmouth Naval Shipyard. The police officer manning the booth is responsible for monitoring every person, every vehicle that enters the shipyard. For obvious reasons, an officer has to be there at all times. 8.30 a.m. on July 7, 2011, Officer Davis is dealing with a steady stream of vehicles. It's probably the busiest time of the day. Suddenly, Captain James Beal comes over to the SEVIS from another part of the shipyard. Counsel, let me ask you a question. I'm going to move you off the facts a little bit, back up to the decision of the Board. The Board took under consideration those four events that happened between October 18, 2010 and May 24, 2011. Those are incidents. It doesn't appear that the Administrative Law Judge took into consideration or said that. Can you state whether it was appropriate for the Board to consider those four incidents? By the four incidents, you mean the other suspensions? The other suspensions that don't appear to I think that in the removal action, it did say that it was taking into account the suspensions. And the suspensions were considered by both the Administrative Judge and the Board as a whole. But anything else to the extent that they went beyond that, that wouldn't have been appropriate. Well, you don't object to considering the prior suspensions as part of the Douglas factors, right? No, no, that's factor three. We concede that that's a factor to be considered. And in our view, that's the only one factor of the twelve factors that goes in the agency's favor. To get back to just exactly what happened here, Captain Peale comes over and he asks, he doesn't order, but he asks that Officer Davis go to the back room in the little SEVIS building that's on the other side of the gate. He didn't say why. He didn't say for how long. He didn't say what this was all about. So Officer Davis's first reaction was, who's going to relieve me? This shouldn't have been a big deal. All Peale had to say was, I'll get so-and-so to cover the booth. But Peale didn't answer. He just repeated his request. Again, it's a request, not an order. So Officer Davis asked again, because if he knew anything from working at the shipyard since January of 2006, it was that you can't leave your SEVIS post without being properly relieved. Peale still didn't answer, but finally he just ordered him to go to the back room. And without any further hesitation, Officer Davis went to the back room. He complied. That's it. That's the full extent of the conduct that the Navy claims was a fireable offense. Even if he had outright refused to obey a proper order, which he didn't, and even if Peale had been his supervisor at the time, which he wasn't, the worst penalty that he could have received according to the shipyard's own table of penalties would have been a five-day suspension. That would be for a first offense, I take it. For a first offense. And this was his first offense. It wasn't his first offense of this precise nature, perhaps, but not his first offense of the general type of misconduct that was concerning the Navy, right? Well, I'm not sure what you mean by general type of conduct. This was the first time he made a request or an order. There wasn't even anything in the suspension that had anything to do with being insubordinate of being... Inappropriate conduct, I think, was the subject matter of the project. The other ones had to do with customer relations before he got his customer trained. And disrespectful comments was part of it, I guess, part of the specifications. Disrespectful comments to... Well, we have to distinguish... What happened was that the Navy saw fit to say that they were moving him for five reasons. And four of them were fairly serious instances of not complying with orders, not complying with senior officers. And then they tacked on this, in our view, pretty trivial instance at the end. But when it came time for proof, they couldn't prove any of those. The administrative judge decided, the board decided, that they hadn't proven any of those except for the last one. And those were the ones where it had to do with being disrespectful, discourteous, except he was reprimanded in the past for supposedly being discourteous to customers. But that's quite different. That really is a separate category from not complying with a request or an order from a supervisor or a senior officer. Do we have the table penalties in the appendix here? Yes. Where is it? That's on... I think it's 111 through 114. And that's not all of it. That's the relevant provisions. And the one that we're looking at is on page four of the table. It's 112 in the appendix. Deliberate refusal to carry out any proper order from any supervisor having responsibility for the work of the employee. And the first offense of that is reprimand to five-day suspension. And this Court has said that... So your view of this table is the only way you can increase the penalty for a second offense if it's exactly the same kind of offense? No, I'm not saying that, Your Honor, because this isn't... I think that the Navy does have leeway in enforcing this. But even if you consider the other suspensions and you take them for what they are, that added to questioning, making a legitimate inquiry on a request... Well, I'm just sticking with the table penalties here. If you make that concession, then this table says for a third offense removal. Right, but this wasn't a third offense. This Court has said before that when you're looking at the table... Why isn't it a third offense? It's a fifth offense, isn't it? No, because it's something that's completely different. It's unrelated. And considering the table of penalties, you have to look at whether something is a first offense or a second offense for that particular penalty. It may not be related to the charges or the specifications under the charges, but there's still prior offenses, correct? There were prior things for which he received penalties. But the intent was that you should know what it is you are being charged to do or not to do. And when you are being penalized for something, it makes a difference whether you've been penalized for that particular offense before or not. It has to do with whether you are on notice. The question here isn't whether Mr. Davis actually, if we view it, whether he was guilty or not of that particular specification. We're looking at whether the LAJ's mitigation penalty was correct or whether the Board's decision that it was incorrect not to mitigate. So that really takes the whole case out of that specific specification. And now the Board is free to consider prior conduct or prior offenses. It's free to use the Douglas factors to consider as one factor whether there have been prior disciplinary actions, which they did. So on that point, and this is my first question to you, why was the Board wrong in considering those other factors? Or how are we to review that particular decision of the Board under our standard of review? You should consider whether they considered the relevant Douglas factors or whether they only considered a couple of factors like the prior suspensions. As opposed to considering what is in the table of penalties, the seriousness of the offense, which really should be the most important consideration, whether there was a possibility of rehabilitation. And they didn't really consider any of these except in reference to the suspensions. So they did make an arbitrary... They did comment on rehabilitation, I believe, didn't they? If I recall correctly. But only because... Somebody that had four prior suspensions in the previous seven months was not looking like a real good candidate for rehabilitation. But that's only because they considered it as part of the, you know, that really is the suspension part. They sort of doubled down on that by saying, well, we don't think that you're a good candidate for rehabilitation just because of these suspensions. Ignoring all the other circumstances. The fact that he didn't have any other problems with customer relations after he got his training that he was supposed to get a year before. The fact that he had this history of having good reviews, being told that he was a team player, that he had good... That, you know, he was polite, that he was professional. They didn't consider any of that as good service. Well, what seems to have happened here, if you look at page 251, the word, the A.J. says, Well, the appellant does have four prior disciplinary actions. This is the first one issued for failure to follow a request. And then she seems to put the four prior offenses aside on that ground. And as I read the board's decision, they're saying, no, no, you can't put it aside just because they weren't involving a failure to follow a request. They have to be considered. That's the difference between the board and the A.J., right? Well, the way I read it is that the A.J. did certainly consider the prior suspension. She gave it a lot of weight, maybe even too much weight. But when it came time to look at the... Well, she didn't give it any weight in regard to rehabilitation. She said, Thus, I find the training that the appellant has the potential for it to be rehabilitated. Because she's putting aside the four prior offenses on the ground that they didn't involve failure to follow a request. Right? I think she considered that along with all the other circumstances that I just mentioned that militate in favor of rehabilitation. And remember, it's the agency's burden to prove that. And the agency hadn't proved it. It comes down to one instance of not... He followed it. He immediately obeyed an order. Before that, he questioned it. And if you're going to have a rule that you can't question anything, I just don't think that that's how the federal government works. Okay. We're out of time. We'll give you two minutes. Okay. Thank you. Ms. Rose? May it please the court. I'd like to start today by also discussing the penalty. Removal was the maximum reasonable penalty for the sustained misconduct in this case. Mr. Davis's arguments in this matter mirror arguments that were made by a petitioner in the Villela decision. And the court's decision in that case really provides guidance for this case. In that case, the petitioner also sought to have the court look at his sustained misconduct, which he maintained was fairly not serious, and vacuumed there. It was four hours of AWOL. In return, the petitioner in Villela went to work at the beginning of the day, went to lunch, and didn't return. So this is removal. It's far too serious for this. But the court said that whether or not the penalty of removal was too severe for the sustained misconduct alone was irrelevant given the prior misconduct. Here we have four prior suspensions. The prior discipline was progressive, and it was recent. This was his fifth disciplinary action within the period of one year. In Villela, the petitioner also made the argument that the agency should be limited to the first offense column, something that the court said would produce an absurd result, wherein an employee could commit each offense once without ever being subject to removal. Because the board's decision considered the devil's factors and is based on substantial evidence, we would argue that the removal should be sustained.  And we would argue that the court's decision to approve his affirmative defense of whistleblower reprisal is supported by substantial evidence. Now, you had submitted as a 28-J letter the Diggs case, I think, which you submitted would deprive this court of jurisdiction over the EEO claim. Is it your view that the EEO claim, having been raised before this court at all, deprives the court of jurisdiction, or that it is appropriate for us simply not to consider the EEO claim? Given that Mr. Davis stated in his statement regarding discrimination that he abandoned his claims of discrimination, we believe that the court could consider the removal and whistleblower activity, and essentially it would be as if the EEO activity was not raised. If, however, the court were to determine that those claims had not been abandoned, then the entire case should be dismissed for lack of jurisdiction. Let me ask you one question on the facts that came up. There was a dispute about whether, in connection with the whistleblowing allegations, Mr. Babcock had knowledge of the congressional communications. And it looked to me from the record as if there was evidence that he did, and yet the board seems to have said that completely that he didn't. What is the government's position on that? Because you didn't address that in your brief. Well, even if Mr. Babcock did have knowledge of the congressional inquiries, the board found that there were no improper communications, non-ex parte communications between Babcock and Tyree, the deciding official. And the board also found that each of the... that the agency had established... Well, Tyree was the deciding official, had nothing to do with this, right? He was just recently arrived on the scene. He had never interacted with Mr. Davis. They worked in different positions. So he had no reason to retaliate against him. And again, Chief Babcock was not... there was no evidence of any improper communications. Was the indication that Tyree pretty much rubber-stamped the recommendation for removal? No, I think that actually is not correct. Mr. Tyree testified before the board that he wrote the Douglas factors analysis himself around... He said that it was a very extensive undertaking, that he did it after hours sometimes around his other duties. The Douglas factors analysis, which can be found at 284 through 296 in the record. Mr. Tyree stated that there was basically a Word document that had each of the elements, but then all of the description underneath that was his own unique work and that he made that analysis himself. Did Babcock have any reason to retaliate against the petitioner here? There wasn't any finding of any improper animus. I believe that the chief complaint against Mr. Babcock related to the EEO complaint, which was about wearing... if Mr. Davis could wear protective hearing. And in that instance, again, although it's outside the court's jurisdiction, Mr. Babcock stated that the petitioner could not wear over-the-ear protection, which was described as like Mickey Mouse type headphones. But he did permit him to wear in-ear hearing protection. And then he also had the decibel level of noise at the CBIS tested. And although it was found that it was within normal levels, he continued to let Mr. Davis wear those inserts. So I don't think... and also that was subject to an EEO complaint, which was ultimately found that there was no improper conduct there. So I don't think that the record has any evidence that there was any improper animus or any reason for Chief Babcock to retaliate against Mr. Davis. If the court has no further questions, we ask that the decision be affirmed. Mr. Kindle? Thank you, Your Honor. Just really quickly on jurisdiction. Diggs was decided in 2011 before the amendments to the Whistleblower Protection Act, which I think makes it clear that was expanding the court's jurisdiction to include all complaints under 2302B8 and 9. And that would include complaints before the... that were made to an EEO office. That's a different issue from whether the complaints were made, the whistleblower-type complaints were made to an EEO officer. It's different from saying that there was EEO-based retaliation. That's an EEO-type claim, not a whistleblower-type claim. So are you abandoning the EEO-type claims without abandoning the whistleblower claims that may be predicated on complaints to an EEO officer? Well, I'll abandon whatever claims are necessary to give the court jurisdiction over this matter, but I don't believe that those would include claims under subsections 8 and 9 of 2302B. On getting back to the issue of the maximum reasonable penalty, yes, he had four suspensions, but there are some actions that are so de minimis that no matter whether you have a record as long as your arm, it shouldn't be grounds for you. If you can't say to somebody, I don't think, that you're missing a button on your shirt, that looks sloppy, you're fired because you have some prior offenses that are unrelated. It's the equivalent of giving somebody a life sentence for jaywalking. Even if they have a record for more than four offenses, you still don't deserve to be put away for life for jaywalking, and this is the equivalent in the employment context of doing that. I think that employees do have a need, a right, to question something before they obey. He did obey when he was given an order, and that should not be a fireable offense. Thank you. Thank you, Mr. Terrell. Thank you, Ms. Rota, for the cases submitted. And that concludes our session for today.